**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roberta WILLIAMS and Frances Harris,
Defendants-Appellants.**

**Nos. 75–2144, 75–2154.**

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1976.

Decided July 1, 1976.

**1204**

Jackie L. Shropshire, Calvin D. Hawkins, Gary, Ind., for defendants-appellants.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and TONE and WOOD, Circuit Judges.

TONE, Circuit Judge.

Defendants Roberta Williams and Frances Harris were convicted in a jury trial of making false material declarations in violation of 18 U.S.C. § 1623. The declarations had been made when they testified as alibi witnesses in the trial, and again in the retrial, of a federal criminal charge against Leroy Williams, the husband of Roberta Williams. On appeal the defendants argue that the district judge abused his discretion in refusing to grant a continuance and that the declarations in question were not shown to have been false.

Leroy Williams was tried in the United States District Court for the Northern District of Indiana in April 1975 on a charge of distributing heroin. Both defendants in the case at bar testified on Leroy Williams' behalf as alibi witnesses in that trial. Count I of the indictment before us charges that Roberta Williams testified falsely in that trial, and Count II charges that Frances Harris did likewise. The jury in the first trial of Leroy Williams having been unable to agree, he was tried again in May 1975, and both the defendants at bar again testified as alibi witnesses. Counts III and IV of the present indictment are based on that testimony. Defendants were convicted in the court below on all four counts.

Each count is an attempt to charge that the witness falsely testified that Leroy Williams was at his home in Gary, Indiana, participating in a birthday party for Garland Jeffers, at approximately 8:00 p. m. on January 14, 1974, whereas in fact he was observed entering the Club 400 at 2156 Broadway Avenue, Gary, Indiana, at that time. Each defendant took the stand in the trial of the case at bar and admitted that she had intended in each of the Leroy Williams trials to testify that he was at home during the entire period when he was supposed to have been seen at the Club 400. Thus the defendants admit that they intended the meaning the government imputes to their testimony.

When the case was called for trial, counsel for both defendants moved for a continuance on the ground that they had not had time to examine "the 3500 material" (i. e., recorded statements of witnesses government proposed to call which were subject to 18 U.S.C. § 3500) received from the government at 5:00 o'clock the previous evening and thus were not in a position "to properly advise [their] clients concerning those documents" or "to properly cross-examine, based upon the material." The judge denied the motion, noting that the government was not required to deliver the 3500 material in advance of trial and had done so voluntarily, and stating that it was his custom to grant delays during the course of the trial when necessary to permit defense counsel "to thoroughly examine any and all 3500 material before cross-examination" and that he would do so in this case. No such requests were made during the trial which followed. Defendants were found guilty on all counts.

## I.

■ Defendants' argument that the district judge abused his discretion in denying them a continuance is frivolous. In the first place, because of the express terms of 18 U.S.C. § 3500, the government could not have been required to deliver any 3500 material to defense counsel until the witness to whom the material pertained had completed his testimony on direct examination. The government's entirely voluntary disclosure of the material the evening before trial gave defendants no rights they would not

otherwise have had. In the second place, the court, in denying the motion, told counsel for the defendants that he would grant recesses during the course of the trial to give defense counsel "an opportunity to thoroughly examine any and all 3500 material before cross-examination," but no such recesses were ever requested. Finally, the 3500 material in question, which defendants allege to have been seven or eight inches thick, was not made a part of the record and, even if the point were not otherwise frivolous, we could not decide it on this record.

## II.

 The primary issue in this case is whether statements the defendants made at the two Leroy Williams trials were "false declarations." An unambiguous answer literally true cannot be the subject of a perjury or false statement conviction even if intended to mislead. *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). The *Bronston* case, on which defendants rely, "dealt with a statement literally true but unresponsive to the question asked . . . not . . . with the situation where a defendant has given a 'yes or no' answer, the truth of which can be ascertained only in the context of the questions posed." *United States v. Chapin,* 169 U.S.App.D.C. 303, 515 F.2d 1274, 1280 *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). When the question and answer may have more than one meaning standing alone, their intended meaning is ordinarily an issue for the jury to determine from their context and other indicia of the witness' intent in giving the answer. *Id.* at 1279–1281. As the court said in the *Chapin* case,

"... the possibility that a question or an answer may have a number of interpretations does not invalidate either an indictment or a conviction after a jury charge which, as here, requires the jury to determine that the question as the defendant understood it was falsely answered in order to convict." 515 F.2d at 1280. [Emphasis deleted.]

*Roberta Williams (Counts I and III)*

 Count I charges that at the first Leroy Williams trial Roberta Williams testified that on January 14, 1974 she was in her house in Gary, Indiana, where a birthday party was being given for Garland Jeffers, and that she herself was ill and spent most of the time in a bedroom of the house with her baby. She further testified as follows:

"Q. Was your husband, Leroy, present there that day?

"A. Yes, he was.

. . . . .

"Q. And how frequently that day were you seeing Leroy Williams?

"A. . . . Pretty often. He was back and forth, you know, checking on me and the baby from the front to the back and from the back to the front.

. . . . .

"Q. Now when you were back there during the whole evening Mr. Williams continued to look in on you during the entire evening?

"A. Yes he did.

. . . . .

"Q. About how often would you say Mr. Williams would check on you?

"A. Ten minutes wouldn't even elapse."

It is further alleged that Leroy Williams was observed entering the Club 400 at approximately 8:00 p. m. on that date.

From the government's evidence the jury could have found that Leroy Williams was in the area of the Sugar Hill Pool Room at 18th and Broadway and the Club 400 at 2156 Broadway in Gary for approximately one hour the evening of January 14, 1974, commencing at about 7:30 p. m. If he was, he could not have been at home looking in on Roberta Williams at least every ten minutes during the same period. Count I of the indictment and the evidence under that count was therefore sufficient to support the jury's verdict.

 The other count against Roberta Williams alleges that at the second Leroy Williams trial she testified that she was

present at the same birthday party and further:

"Q. Did Mr. Williams leave that address to your memory or knowledge any time during January 14th?

"A. No, he didn't."

This testimony might be read either to be an affirmative statement that Williams was on the premises at all times or as merely a statement that she did not actually see him leave. The latter reading, however, is precluded by her further testimony during the second Leroy Williams trial that after 5:00 p. m. he was never "out of her sight" for more than five or ten minutes.

As we have said, the jury was entitled to believe that Leroy Williams was in the vicinity of the Club 400 for approximately an hour on the evening of January 14th. If he was there, he left his home during January 14th, and Roberta Williams' testimony to the contrary was false. The qualifying words "to your memory or knowledge" did not prevent the testimony from being perjurious. Whether the witness remembered the events of January 14th was a question for the jury, cf. United States v. Devitt, 499 F.2d 135, 140 (7th Cir. 1974), cert. denied, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), and they were of course aided in deciding that question by Roberta Williams' testimony in the trial of this case that she did remember those events and that in fact it was "impossible for [Leroy Williams] to have been gone from that house for more than ten minutes on January 14, 1974."

*Frances Harris (Counts II and IV)*

 Count II of the indictment charges that in the first Leroy Williams trial Frances Harris testified that she was present at the Garland Jeffers birthday party at the Williams' house on January 14, 1974, and that Leroy Williams was present at the party and before the party started. She allegedly further testified as follows:

"Q. And did Mr. Williams remain at that house during that day?

"A. Yes, he did."

The word "day" standing alone can mean either the calendar day or the period be-

tween sunrise and sunset. But that word and the question and answer in which it appears take on a specific meaning when they are read in the context of the inquiry and of the entire series of questions asked the witness on that subject. Cf. *United States v. Chapin, supra,* 515 F.2d at 1280. Everyone present at the first Leroy Williams trial knew that the purpose of the examination was to prove where Leroy Williams was when the crime was allegedly committed. That the witness understood the question, and intended her answer, to include the night of January 14th and not merely the daylight hours of that date is confirmed by her later testimony at that trial:

"Q. In how close contact were you with Mr. Williams, let's say, up until 8:00 o'clock that evening?

"A. You mean how long was he there?

"Q. Yes.

"A. Oh, to my knowledge he was there all the time because I was in the kitchen cooking at that time.

"Q. Now were you ever aware of any time that Mr. Williams left that address that evening?

"A. No, I don't."

She herself, in her testimony in the trial of the case at bar, stated that the intended meaning of her answer was that Williams was in his house throughout the day and evening. Her testimony to this effect concluded as follows:

"Q. Did you intend that jury of men and women on April 14 and 15 to believe you, to be saying that he could not have left the house that evening; is that correct?

"A. Yes."

There is accordingly no dispute that, when Frances Harris testified at the first Williams trial that he remained in his house during that day, she intended to be understood as saying that he remained in his house during the evening as well as the daylight hours and not merely that he remained there during the daylight hours. The jury in the case at bar, which was properly instructed on the requirements of

scienter, could not rationally have found otherwise. When they further found, as they apparently did, that in fact Williams was elsewhere for one hour on that date, it followed that her testimony was false.

The remaining count against Frances Harris, based on her testimony at the second Leroy Williams trial, alleges that she testified she was present at the birthday party, was at the Williams' house all day, and saw Leroy Williams that day, and that her testimony included the following:

"Q. Okay, Now during the course of that day did you continue to see Mr. Williams at that address?

"A. Yes."

The false statement, if there is one, must be found in the quoted question and answer. The ambiguity in "day" can be resolved as it was with respect to Count II. The entire combination of words of which it is a part, however, is in our view less susceptible to two interpretations than the language charged in Count II. While the affirmation that "during the course of that day" she "continue[d] to see him at the address," literally read, might bear the interpretation that she saw him there continuously at all times during the day, which would mean he never left her presence, this is hardly a reasonable interpretation. We think the ordinary meaning of the words is that during that day the witness saw Williams from time to time and not necessarily that he never left her presence. The distinction between the material language in the two counts is a matter of degrees rather than absolutes, but we think it sufficient to require the different results we reach.

Since Count IV of the indictment does not, in our view, charge an offense, it could not be the basis for a conviction. The fact that the witness intended to testify that Williams was present at the house during the entire evening, as she admitted at the trial of the case at bar, establishes only that she intended to commit perjury, not that she did so. Accordingly, the conviction under Count IV of the indictment is reversed.

AFFIRMED IN PART AND REVERSED IN PART.