**UNITED STATES of America, Appellee,**

v.

**Edward Sinclair WILLIAMS, Appellant.**

**No. 76–1798.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1977.

Decided March 23, 1977.

George E. Schaaf, Clayton, Mo., on brief for appellant.

Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U. S. Atty., on brief.

Before CLARK, Associate Justice, Retired,* HEANEY and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Edward Sinclair Williams was convicted by a jury on three counts of making false declarations under oath before a United States grand jury in violation of 18 U.S.C. § 1623. On appeal he argues (1) that Counts II and III were multiplicitous, (2) that he did not commit perjury because his answers were literally true, and (3) that the alleged perjurous statements were not material to the grand jury investigation and thus not violative of 18 U.S.C. § 1623. We affirm in part and reverse in part.

The charges against Williams stemmed from his appearance before a grand jury investigating allegations that individuals in the Collection Division of the Hospital Division of the City of St. Louis used the telephone and the mails to solicit money for their personal use in return for the release or compromise of liens filed by the city hospital.[1] Williams, an attorney,[2] was the Collection Supervisor for the city hospital from 1969 until May 1976. He had authority to file liens against an injured patient's cause of action, to release or compromise the liens and to reduce hospital bills if litigation was involved even though the city hospital had not filed a lien. Plaintiffs' attorneys often contacted Williams in an effort to reduce their clients' hospital bill when it appeared that their clients' recovery would be minimal.

Michael Stokes, a St. Louis attorney, testified before the grand jury that on May 1, 1975, he contacted Williams in an attempt to reduce the $1,509 bill of his client, the Cantrell family. A lien had been filed and Williams offered to release the lien for $250 in cash, paid to an office fund. Williams indicated he would pick up the money at Stokes' office and release the Cantrell lien at that time. Stokes became suspicious since the usual practice was to reduce the bill by one-third or one-half and to pay the bill by a check written to the hospital. He reported the incident to the United States

---

* TOM C. CLARK, Associate Justice, Retired, Supreme Court of the United States, sitting by designation.

1. The grand jury was investigating possible violations of 18 U.S.C. §§ 371, 1341, 1951 and 1952.

2. Williams obtained a law degree in 1956 but was never admitted to the Missouri Bar.

Attorney's office and was put in contact with the F.B.I. With Stokes' approval, the F.B.I. recorded all subsequent conversations that he had with Williams. Stokes then recontacted Williams and told him he would pay the amount requested. Williams indicated the price would remain $250 in cash. At Stokes' office on May 22, 1975, Williams was given $250 in cash.[3] He then released the hospital lien against the Cantrell's cause of action and endorsed the insurance checks over to Stokes. Williams told Stokes that the money would be used for a picnic. At the F.B.I.'s request, Stokes contacted Williams again to see if the hospital bills of three other clients could be handled in the same manner.

The city hospital records show that no money was applied to the Cantrell bill and that the lien was released by Williams. Other than a coffee and flower fund, the Hospital Division had no office fund.

Before the grand jury, Williams testified that he had neither taken any money for his own use nor solicited cash for a fund in exchange for the release of liens and that he has never received cash to compromise a lien. At trial, Williams testified that he borrowed the $250 from Stokes to attend a family reunion in Arkansas. When Williams was arrested, the F.B.I. Agents played the tape of the May 22 meeting. Williams denied receiving any money from Stokes and stated he didn't know to what the $250 referred.

## I.

▮▮▮ Williams contends that Counts II and III are multiplicitous because they re-peat the same questions asked in Count I. While the questions forming the basis for Counts I and II are sufficiently distinct to support separate false statement convictions, the questions asked in Count III are not.

The false declarations charged in each of the three counts are set forth below.[4] The question asked in Count I sought to determine whether Williams received money for his own use for the release of liens, while the questions in Count II asked whether Williams had ever solicited cash contributions to a fund for the release of liens. Since the question in Count I related to receipt of money and the questions in Count II related to solicitation for a fund, different facts were needed to demonstrate that the responses were false. *See United States v. Doulin,* 538 F.2d 466, 471 (2nd Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). The questions asked in Count III, however, were essentially the same as those asked in Counts I and II. Count III involves the questions asking whether Williams received cash to compromise liens which is the same as being asked whether he received money or solicited cash to release liens. We agree with the Ninth Circuit which stated that it is improper for "the government [to] bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts." *Gebhard v. United States,* 422 F.2d 281, 289–290 (9th Cir. 1970).

The conviction on Count III is, therefore, reversed, with directions to the District

---

**3.** The money was furnished to Stokes by the F.B.I.

**4.** *Count I:*
Q. Have you yourself ever taken any money for your own use and benefit in exchange for the release of liens?
A. No.
*Count II:*
Do you know if any of your employees or supervisors or you yourself have ever solicited any lawyers for cash contributions for any funds in exchange for the release of liens?
A. · To a fund?

Q. Yes.
A. No.
*Count III:*
Q. You don't get any cash?
A. No.
Q. You don't get any cash to compromise liens?
A. No.
Q. You have never gotten any?
A. No. When the lien is compromised, the company sends in its draft and then, of course, the drafts are deposited with the General Revenue Fund.

Court to dismiss Count III and impose final sentence only on the remaining counts.[5]

## II. ·

Relying principally upon *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), Williams next contends that his answers were literally truthful and thus his convictions for perjury cannot stand. After a careful review of the record we are unable to accept his contention.[6]

In *Bronston* the answers given by the defendant were both unresponsive to the question and literally true. The Supreme Court held "that any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution." *Id.* at 362, 93 S.Ct. at 602. *See also United States v. Cook,* 489 F.2d 286 (9th Cir. 1973); *United States v. Wall,* 371 F.2d 398 (6th Cir. 1967). In *Bronston,* however, the Court dealt only with a literally true declarative statement and not with the situation presented by Williams' "No" answers, the truth or falsity of which can only be ascertained in the context of the question asked. *See United States v. Williams,* 536 F.2d 1202, 1205 (7th Cir. 1976); *United States v. Chapin,* 169 U.S.App.D.C. 303, 515 F.2d 1274, 1280, *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). If the response given was false as the defendant understood the question, his conviction is not invalidated by the fact that his answer to the question might generate a number of different interpretations. *United States v. Chapin, supra; United States v. Parr,* 516 F.2d 458, 470 (5th Cir. 1975).

Williams contends that his "No" answer in Count I was literally true because the evidence showed that he only accepted money for his own use to release one lien and not to release more than one lien. He claims his answer in Count II was literally

true because the question referred to "lawyers" and "liens" when the evidence demonstrated that only one lawyer and one lien were involved. When viewed in context, it is clear that Williams understood the use of the plural to include the singular. This is supported by Williams' testimony at trial when he used the terms "lien" and "liens" interchangeably. Williams further contends that no credible evidence showed that he solicited cash contributions "to a fund." We are unable to agree, as Stokes testified that Williams solicited a cash contribution for a fund. While there was no evidence that Williams knew other Collection Division employees were involved, there is evidence that he was involved. For a false statement conviction to be sustained, "[i]t is sufficient to prove falsity in regard to one or more material particulars." *United States v. Makris,* 483 F.2d 1082, 1087 (5th Cir. 1973), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1408, 39 L.Ed.2d 467 (1974). Thus, the statements in Count II were false as to Williams own solicitation of cash to release liens.

The intended meaning of a question and answer are matters for the jury to decide. *United States v. Williams, supra,* 536 F.2d at 1205; *United States v. Parr, supra,* 516 F.2d at 470. Here, the jury was properly instructed that it could not convict Williams if he made a false statement by mistake, accident or other innocent reason, and that a statement is knowingly false only if it was untrue when made and known to be untrue by the individual making it. There was sufficient evidence to support the jury's verdict that Williams knowingly made false statements to the grand jury.

## III.

Finally, Williams claims that his false statements were not material to the grand jury investigation. Viewing the evidence as we must in the light most favorable to the verdict, we conclude that the

---

**5.** Final sentence has not yet been imposed as the District Court sentenced Williams to a period of observation and study under 18 U.S.C. § 4208(c).

**6.** Since we have dismissed Count III on other grounds we do not reach the issue of whether the statements that formed the basis for Count II were literally true.

government has sufficiently established both the materiality of the statements in question and the authority of the grand jury to conduct its investigation.

The grand jury was investigating possible violations of federal laws by St. Louis City officials. It is established that "[t]he mere possibility that violations of federal law have occurred is sufficient authority for a grand jury investigation." *United States v. Sisack,* 527 F.2d 917, 920 (9th Cir. 1976). Here, the grand jury was investigating allegations that Williams solicited and accepted cash under circumstances that indicated possible violations of 18 U.S.C. § 371 relating to conspiracies to defraud the United States, 18 U.S.C. § 1341 relating to mail fraud, and 18 U.S.C. §§ 1951 and 1952 which relate to interference with interstate commerce by threats or violence and interstate travel in aid of racketeering respectively.[7]

▮▮▮ To sustain a conviction under 18 U.S.C. § 1623 the statute explicitly requires that it be based on testimony material to a proper inquiry of the grand jury. *United States v. Beitling,* 545 F.2d 1106 (8th Cir.); *United States v. Phillips,* 540 F.2d 319, 328 (8th Cir.), *cert. denied,* — U.S. —, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976); *United States v. Koonce,* 485 F.2d 374, 381 (8th Cir. 1973). As this Court stated in *United States v. Phillips:*

> The criterion for determining materiality in this Circuit is whether or not the statements alleged to be perjurous tend to impede or hamper the course of the investigation by the grand jury.

*Id.* at 328. The grand jury was concerned here with the possible involvement of others, as well as the extent Williams' involvement, in the alleged payoff scheme. Williams' false denials of involvement impeded the inquiries as to the involvement of others

and also frustrated the inquiry into the extent of his own involvement. The fact that the grand jury had other evidence before it of Williams' involvement in one instance does not affect the materiality of his testimony. In a similar case, this Circuit has recently held that a lawyer's denial that he told his clients he could fix a case for them was material even though the grand jury had already heard tapes of conversations between the lawyer and his clients. *United States v. Beitling, supra,* 545 F.2d at 1110.

Thus, Williams' statements that he never received money or solicited cash contributions in exchange for the release of liens were material to the inquiry of the grand jury.[8]

Accordingly, we remand to the District Court with instructions to dismiss Count III and to impose final sentence only with respect to Counts I and II.

---

7. No question is raised here as to the grand jury's authority to investigate the activities of Williams. The grand jury was conducting its inquiries with respect to possible violations of federal laws. We do not have a situation where the federal government is interfering in an area properly left to the states. *Cf., United*

States v. McNeive, 536 F.2d 1245 (8th Cir. 1976). *Compare with United States v. Brown,* 540 F.2d 364 (8th Cir. 1976).

8. Again, we do not consider the materiality of the statements in Count III because of its dismissal on other grounds.