**UNITED STATES of America, Appellee,**

v.

**Robert J. KEHOE, Defendant, Appellant.**

No. 77–1027.

United States Court of Appeals,
First Circuit.

Argued April 4, 1977.

Decided Aug. 3, 1977.

As Amended on Denial of Rehearing
Sept. 28, 1977.

Albert F. Cullen, Jr., Boston, Mass., for appellant.

Robert B. Collings, Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and MILLER, Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

On June 4, 1975, while testifying under oath before a grand jury, Robert J. Kehoe answered "no" to various questions. Indicted for making false statements in violation of 18 U.S.C. § 1623, Kehoe was convicted and now appeals.

Prior to testifying before the grand jury, Kehoe was informed of his fifth amendment right to remain silent and his right to consult with his lawyer, after which it was explained

---

* Hon. Jack R. Miller of the United States Court of Customs and Patent Appeals sitting by designation.

"that the grand jury is investigating at the present time the involvement of persons in a number of crimes against banks in Massachusetts. We are investigating conspiracies to violate the laws prohibiting the robbery of federally insured banks, both in Massachusetts and other states, particularly the state of Maine. We are investigating the attempted extortion, bank larceny and apprehension of innocent persons in an event occurring in Needham on August 23, 1974. We are investigating the identity of persons involved in the similar type of actions, that is attempted extortion, apprehension of bank employees and attempted bank larceny occurring in Quincy, in November of 1974, and also a bank robbery occurring in Peabody in December of 1974."

When asked "Do you understand that this is what the grand jury is investigating at the present time?" Kehoe replied, "Yes." The Government then reminded Kehoe that he had taken an oath and that if he made a false statement he could be indicted for perjury. When asked if he understood this, Kehoe said, "Yes." Moreover, he responded, "No" when asked if he had any questions "as to what the grand jury's investigation is about and . . . what [his] rights are and . . . what the situation is so far as perjury is concerned."

In the questioning that followed, Kehoe was asked about two admitted acquaintances and their physical appearances. He was asked whether he had ever dyed his hair, how long he had worn a mustache, and other questions in the same vein. He was then asked:

"Q. Have you ever been to an apartment on Skyline Drive in Braintree?

A. No.

Q. Have you ever been to Quincy with either Mr. Trainor or Mr. Rossi?

A. No.

.    .    .    .    .

Q. Have you, sir, ever participated in a bank robbery?

A. No.

Q. Have you ever participated in any attempts to extort money from a bank?

A. No.

Q. Have you ever engaged in the apprehension of any bank employee for the purpose of taking money from the bank?

A. No.

.    .    .    .    .

Q. Have you ever entered a bank with the intent to rob it?

A. No."

The answers to these six questions formed the basis of the one-count indictment against him.[1]

The Government presented the following at trial:

---

1. The Indictment read as follows:
"A. That on or about June 4, 1975, at Boston in the District of Massachusetts, ROBERT JOSEPH KEHOE, of Boston, in said District, in response to a subpoena duly issued, appeared before the Grand Jury of the United States and made oath as is authorized by the law of the United States to be administered, that he would testify, declare, depose, and certify truly.
"B. That after being duly sworn to tell the truth, ROBERT JOSEPH KEHOE, to the following questions made the following answers:
[listing the six questions and answers set out in text above]
"C. That the Grand Jury was then and there engaged in an investigation to determine the identity of persons committing violations of Title 18 United States Code, Sec-

tions 2113(a), 2113(d), 2113(e), 1951(a), and 371, i. e., bank robbery and larceny, armed bank larceny, forced accompanyment [sic] of persons in order to effect bank larceny, attempted extortion, and conspiracy in Quincy in November 1974 and in Peabody in December 1974.
"D. That said testimony given by ROBERT JOSEPH KEHOE was therefore material to a matter then and then [sic] under investigation.
"E. That ROBERT JOSEPH KEHOE, in giving that testimony, reproduced in this indictment, willfully and contrary to his oath declared falsely a material matter which he did not believe to be true, all of his testimony being false, as he well knew.
"In violation of Title 18, United States Code, Section 1623."

In early November, 1974, Kehoe met with three other men in a lounge in Kenmore Square, Boston, after which they drove together to Quincy to check out a bank manager's house.

On November 6, 1974, as Martha Curran, Manager of a federally-insured bank in Quincy, Massachusetts, was leaving her apartment on Skyline Drive in Braintree, she was abducted by three masked men. They took her back to her apartment and placed what they said was a microphone on her person. A briefcase was handcuffed to her wrist and she was told that it contained a bomb which would be detonated by remote control unless she went to the bank, filled a suitcase with money and left the suitcase at a specified location on Storrow Drive in Boston. While the three men dealt with Mrs. Curran in her apartment, a fourth, identified as Kehoe by an accomplice who testified for the Government, remained outside in a getaway car. Mrs. Curran alerted police and the attempted extortion was thwarted. None of the perpetrators were caught at the time.

On December 4, 1974, four men drove up to and entered a federally-insured bank, one, identified as Kehoe, dressed in a police jacket. A holdup was announced and carried out following which the four robbers made their getaway.

Kehoe contended at trial, and now urges, that the grand jury was not investigating the Peabody robbery but rather the Quincy-Braintree attempted extortion. Therefore, he reasons, the Peabody robbery was not material to the questions asked by the grand jury and evidence of the Peabody robbery should have been excluded.

■■■■ This line of argument is totally without merit. The grand jury told Kehoe, as it told other witnesses appearing before it, that it was investigating an event in

Needham in August, 1974, an attempted extortion, apprehension of bank employees and attempted bank larceny occurring in Quincy in November, 1974 (the Braintree-Quincy incident) and a bank robbery occurring in Peabody in December, 1974. Materiality is a question of law to be decided by the trial court, *see, e.g., United States v. Phillips*, 540 F.2d 319, 328 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976); *United States v. Demopoulos*, 506 F.2d 1171, 1176 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673, (1975); *United States v. Paolicelli*, 505 F.2d 971, 973 (4th Cir. 1974), and on this record there is no doubt that the district court's conclusion was correct. The testimony about the Peabody robbery was properly admitted.

Kehoe next contends that even if the Peabody incident was material, he could have understood the grand jury's questions to be limited to the Quincy-Braintree incident. Therefore, he argues, it was error for the court to refuse to instruct the jury that the questions must be viewed in context; that they must determine what the questions meant to the defendant when he gave the disputed answers, *see United States v. Wall*, 371 F.2d 398, 400 (6th Cir. 1967); and that if the defendant's statements were "literally true within the context of the questions asked, even if misleading by implication or omission," he must be acquitted. *See Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).

■■■■ We do not believe that the possibility that the defendant understood the questions to be limited to one particular incident raises an issue of literal truth.[2] An answer that is responsive and false on its face does not come within *Bronston's* literal truth analysis simply because the defendant can postulate unstated premises of the

---

2.  *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), held that a witness may not be convicted of perjury for an answer under oath that is literally true but not responsive to the question asked and arguably misleading by negative implication. It follows that a literally truthful answer may not support a perjury conviction. *See, e. g., United States*

*v. Cook*, 489 F.2d 286, 287 (9th Cir. 1973). Where there is a question of fact as to whether an answer was or was not literally true, a jury instruction along the lines requested here should be given upon a proper request. *Cf. United States v. Makris*, 483 F.2d 1082, 1086–87 (5th Cir. 1973), *cert. denied*, 415 U.S. 914, 94 S.Ct. 1408, 39 L.Ed.2d 467 (1974).

question that would make his answer literally true. *See United States v. Chapin*, 169 U.S.App.D.C. 303, 309, 515 F.2d 1274, 1280 (1975). Defendant's theory really is that he misunderstood the questions.[3] But there is no evidence in this case to support his claim that the context of the questions was unclear. On the contrary, the grand jury minutes reflect a broad inquiry into several bank robbery incidents both in and out of Massachusetts over a period of time.

The court instructed generally that in order to convict, the jury must find that the accused understood his answer to be false, and further that a false answer given because of "inadvertence or honest mistake or carelessness or neglect or misunderstanding the question" was not perjury. It was not required to give defendant's more elaborate requested instructions solely on the basis of his claim that he had embellished the prosecutor's questions with a limitation not otherwise apparent.

■ Kehoe's remaining objections are quickly answered. The court was correct in instructing that the Government satisfied its burden of proof so long as it proved beyond a reasonable doubt that Kehoe knowingly answered at least one of the questions falsely. *See United States v. Dilworth*, 524 F.2d 470, 471 n.1 (5th Cir. 1975). *See also United States v. Isaacs*, 493 F.2d 1124, 1155 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *Driscoll v. United States*, 356 F.2d 324, 331 (1st Cir. 1966), *vacated on other grounds*,

390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968); Fed.R.Crim.P. 7(c)(1). It is too late for Kehoe to argue that the court should have instructed that all members of the jury had to agree that at least one of the statements in the indictment was false. *See Vitello v. United States*, 425 F.2d 416, 422 (9th Cir.), *cert. denied*, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970). Having neither requested such an instruction nor objected to its absence, he is foreclosed from raising the issue on appeal. *Dirring v. United States*, 328 F.2d 512, 514 (1st Cir.), *cert. denied*, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964); Fed.R.Crim.P. 30.

■ There was no error in admitting into evidence statements of two accomplices, some of which were made in the Skyline Drive apartment out of Kehoe's hearing. The court may admit into evidence the statement of a co-conspirator if it finds by a preponderance of the evidence that a conspiracy existed of which the defendant was a part. *United States v. Petrozziello*, 548 F.2d 20, 23 & n.2 (1st Cir. 1977). *See United States v. Doulin*, 538 F.2d 466, 471 (2d Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). The court found that Kehoe and the three other men had "had discussions about the fact they were going to grab the bank manager and they weren't going to grab [her] to take [her] to the Red Sox game". Obviously it was satisfied as to the existence of a conspiracy and of Kehoe's participation.[4] There was more than enough evi-

---

**3.** We note that one and possibly two of the six responses might have given rise to a Bronston literal truth defense on an altogether different theory. The Government's evidence was that Kehoe remained in the getaway car while three men went into the bank manager's apartment building on Skyline Drive in Braintree. Therefore, when Kehoe answered "no" to the question: "Have you ever been to an apartment on Skyline Drive in Braintree?" he could be said to be telling the literal truth. Defendant's counsel observed early in the trial that the Government's evidence did not place Kehoe in the Skyline Drive apartment, but the point was made in an effort to exclude all evidence of what occurred in the apartment, an objection that was properly overruled. *See infra.* Kehoe's "no" answer when asked if he had ever "engaged in" the apprehension of a bank em-

ployee might also be deemed literally true, although this is less clear, given Kehoe's participation as a principal in the apprehension scheme. However, the only omitted instructions properly preserved for appeal by objection after the jury charge, *see United States v. Taglianetti*, 456 F.2d 1055 (1st Cir. 1972), were numbers seven and eight, which addressed the issue of understanding the questions in context. The court's response to the objection indicates that it was thinking of that issue, and not the classic *Bronston* problem. Appellant therefore did not properly preserve his proposed instructions which outlined his *Bronston* defense.

**4.** Kehoe also argues, without citing any precedent, that even if there was a reasonable basis for finding of a conspiracy, to be admissible in

dence for such a conclusion. The witness identified Kehoe and said he had known him 12 to 14 years. He told of a car ride with Kehoe and two others to Quincy to look at the bank manager's house. He testified that the purported leader of the criminal efforts stated in Kehoe's presence that the men were going to rob a bank, that one would handcuff the bomb to the bank manager's hand and that Kehoe would stay out in the car. He testified that Kehoe did in fact stay out in the car.

Finally, Kehoe argues that it was error for the court to admit into evidence the recording secretary's informal notes indicating that the witness had been sworn. Neither the recording of the proceedings nor the official transcript includes Mr. Kehoe's taking of the oath. The grand jury reporter, however, testified that the tape recorder was not turned on until after Kehoe was sworn and that her notation to the effect that he had been sworn was made shortly after the event. The rough notes represented a "present sense impression" recorded close to the time of the event and as such are not excluded under the hearsay rule. There was no error. *See* Fed.R.Evid. 803(1). *See also La Placa v. United States*, 354 F.2d 56, 59 (1st Cir. 1965), *cert. denied*, 383 U.S. 927, 86 S.Ct. 932, 15 L.Ed.2d 846 (1966).

*Affirmed.*

---

a perjury trial, "the government must prove that the questions propounded clearly indicated . . . the possibility of a conspiracy and the defendant's role in it. These questions did not." The argument is without merit. Appellant was not entitled when appearing before the grand jury to be informed that the ques-

tions asked of him related to a suspected conspiracy. The Government did more than was constitutionally required in reminding Kehoe of his fifth amendment rights, *see United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977) and the questions were material to the matter under investigation.