**UNITED STATES of America, Plaintiff,**

v.

**Gerald E. POPPERS, Kurt A. Madsen, Gary L. Ridge, Timothy L. Crose and William R. Crafton, Defendants.**

**No. 85 CR 399.**

United States District Court, N.D. Illinois, E.D.

March 12, 1986.

Daniel Reidy, Asst. U.S. Atty., Chicago, Ill., for U.S.

Dan Pope, Chicago, Ill., for Poppers.

James B. Burns, Isham, Lincoln & Beale, Chicago, Ill., for Madsen.

Harry B. Bainbridge, Chicago Heights, Ill., for Ridge.

Stanley Hill, Katherine R. Saja, Chicago, Ill., for Crose.

Hal R. Kessler, Mitchell Ex, Chicago, Ill., for Crafton.

## MEMORANDUM ORDER

ASPEN, District Judge:

After careful review of the full record, the Court concludes that the November 14, 1985 convictions of Gerald Poppers and Kurt Madsen should be vacated as to Count III, but that the convictions of Timothy Crose and Gary Ridge and the convictions of Madsen and Poppers on the other counts should not be disturbed. The Court also denies the defendants' motions for a new trial and the supplemental motions for a new trial based on newly-discovered evidence.

In considering the defendants' motions for judgment of acquittal, we must view the evidence in the light most favorable to the government. *See, e.g., United States v. Marshall,* 719 F.2d 887, 890 (7th Cir. 1983). If the evidence, viewed in this light, supports the jury's verdict as to a defendant on any one of the three obstructions alleged in Count III, then the conviction should stand. *See United States v. Kehoe,* 562 F.2d 65, 69 (1st Cir.1977) (perjury context), *cited with approval in United States v. Serola,* 767 F.2d 364 (7th Cir. 1985).

### A. Count III—Crose, Madsen and Poppers

Count III alleges that the three named defendants "corruptly endeavored to influence, obstruct and impede the due administration of justice by endeavoring to influence Dexter Bartlett's testimony" before the grand jury in three ways:

1. To testify falsely that he did not see any of the officers hit Moore at the Police Department on January 28, 1983.

2. To testify falsely that on that night no citizens (i.e., Mrs. Castro in particular) were present in the station when Moore was brought there.

3. To testify that the photos he took of Poppers and Madsen's injuries truly and accurately portrayed those injuries.

It should be noted what Count III does *not* charge; there is no alleged conspiracy to obstruct justice and no alleged aiding and abetting of the obstruction. Rather, Count III alleges that each of the defendants obstructed justice in violation of 18 U.S.C. § 1503. Thus, the government had the burden to show that each named defendant committed at least one of the alleged obstructions himself. Mere presence in a room when another co-defendant exhorted Bartlett to lie would not suffice. With these remarks in mind, we turn to the evidence.

Bartlett testified that he saw part of the alleged beating. He said that he had been in a room, next to the room where the beating took place, interviewing a woman named Deanna Castro. He also testified extensively about how he took photos of Madsen and Poppers and how they had touched up their injuries. On March 27, 1984, after Bartlett, Zajac and the defendants had been subpoenaed to testify before the grand jury, two meetings took place. The first occurred at Sauk Village City Hall and was attended by the subpoenaed policemen and village attorneys. No relevant evidence was presented at trial about the substance of that meeting. However, the government highlights the fact that Bartlett—who was potentially only an occurrence witness rather than a suspect in the beating—was at that meeting. The government presumably wants the Court to infer that Bartlett was coached to lie at this meeting.

The second meeting, the crucial one, took place that night in the police department's basement and was attended by Poppers, Madsen, Crose, Crafton, Zajac, Bartlett, Ridge and DiSanto. There is no evidence that Poppers said anything relevant to Bartlett at this meeting. Crose did most of the talking. According to Bartlett's testimony, Crose told him to tell the grand jury: "You were just in the station compiling investigative leads, going through reports, and you don't know what the hell happened." When Bartlett responded, "We figured out that I was working on a forgery case and Mrs. Castro was in my office at the time," Crose rejoined, "[b]ut you don't have to say what type of case you were working on; just say that you were in your office reading reports and compiling investigative leads, like you normally do, and that you took the photographs." Bartlett further testified that Crose was urging him to keep out the facts that he was in the interview room, and that a civilian was present.

According to Bartlett, Madsen said only one thing at the meeting. After Crose had asked Bartlett to describe his testimony, Madsen interjected, "I [meaning Bartlett] was just taking photographs and I was present when the girl, meaning Brown's (sic) girlfriend, was taken into custody."

On cross-examination, this testimony was elicited:

Q. None of these men ever told you once that they wanted you to go into the grand jury and lie, did they, sir?

A. And lie?

Q. Yes, and lie?

A. No.

Q. And suborn perjury? They never said that, did they?

A. They told me how to testify ... [Inaudible].

Except for the incidents involving the faked photographs, that is all the relevant evidence on Count III.

 We think it is clear that Poppers cannot be convicted on the basis of the above evidence. There is simply no evidence that he urged Bartlett to testify falsely. His presence at the meeting does not suffice. Neither does his role in exaggerating his injuries. He is not charged with falsifying evidence, only with endeavoring to get Bartlett to testify falsely that the photos were accurate. While Poppers' role in faking the photos perhaps supports an inference that he told Bartlett at some time to say they were accurate, this inference is too tenuous and speculative under a reasonable doubt standard, especially when Bartlett never alluded to Poppers saying anything.

 In contrast, the evidence against Crose is sufficient to convict. Although no threats were used and Crose never said "lie" (assuming Bartlett is to be believed), the evidence supports the jury's conclusion that Crose tried to get Bartlett to hide the fact that he was in the booking room, and that a civilian was in the station at the time. Note, though, that there is an ambiguity in Crose's alleged statements. He could have just been saying that Bartlett should not volunteer this information, not that he should hide it. But it was for the jury to decide how to construe this ambi-

guity. Viewing the evidence in the government's favor, we deny Crose's attack on the guilty verdict in Count III.

■ The evidence against Madsen falls between that against the other two. While his one alleged statement, when taken in context, is consistent with what Crose said, we conclude that it is too weak to support a conviction. Unlike Crose, Madsen does not explicitly say to leave out the fact that Castro was present. There is a fine line between coaching someone to lie and coaching someone to present a story in the "best" light. Absent additional evidence, we think we have to give Madsen the benefit of a reasonable doubt that he did not coach Bartlett to lie.

B. *Count IV—Madsen and Poppers*

This count alleges the same substantive offense, this time as between defendants Madsen and Poppers and witness Zajac. Specifically, Madsen and Poppers are charged with trying to persuade Zajac to testify falsely before the grand jury that he did not see any of the officers hit Moore at the police department on January 28, 1983. The evidence is sufficient to sustain both convictions on this count.

■ The evidence consists mostly of Zajac's testimony and transcripts of phone calls he had with Madsen and Poppers. Zajac testified that shortly after receiving a subpoena, Madsen and Poppers phoned him to say that they would send him a letter suggesting what this testimony should be. This alone is not illegal, since it must be shown that they were going to suggest that he testify falsely. However, taken in the context of the following evidence, this testimony is significant.

Zajac testified that Madsen asked him what his real recollection was. When Zajac told him, Madsen said (assuming Zajac is to be believed), "you can't say that; we'll tell

you what to say." Officer Koliboski overheard Madsen's end of the conversation and gave consistent testimony. Madsen's brief only attacks the credibility of these witnesses and not very strongly. This evidence alone is enough against Madsen.

The April 16, 1984 transcript of Madsen and Zajac's phone conversation bolsters the case against Madsen. Madsen told Zajac that "Jerry and I were talkin' and he, uh, we decided not to send you that item, because of possible consequences if it got into the wrong hands." The "item" referred to is the letter, which corroborates Zajac's earlier testimony.

The case against Poppers is weaker. The above evidence is probably insufficient by itself, since Poppers is implicated only in two tenuous ways: first, that he said we would send a letter; second, that Madsen said that he and Poppers decided not to send a letter because of the risks. This alone does not prove that Poppers committed the crime charged. However, the April 17, 1984 phone call between Zajac and Poppers adds the following bits of evidence: there is a reference to the unmailed letter (Transcript at 4). Zajac then relates one thing that Madsen had told him:

> [Madsen] said the same story, as uh, uh, when I got there and with him going to, past the booking room into the radio room and stuff.

Transcript at 5. This is significant, for Zajac's real story was that he was *in* the booking room and saw the beating. Poppers replies, "Yeah, that's the same we want you to testify to." *Id.*[1] Given the entire context, this statement supports the jury's verdict as to Poppers on Count IV.

In sum, Poppers and Madsen's motions for judgments of acquittal are granted as to Count III. The defendants' motions for acquittal are denied in all other respects. Their initial motions for a new trial are also denied. It is so ordered.[2]

---

**1.** Poppers' reply brief says that this last statement is mis-transcribed, and that the tape actually has Poppers saying, "that's what I testified to," referring to his own recent civil deposition. We have listened to and reviewed carefully the

actual tape and conclude that the current transcription is correct and that Poppers is wrong in recounting his language on the tape.

**2.** We have discussed in this opinion those arguments fully developed by the defendants in their

C. *Poppers and Madsen's Supplemental Motions for New Trial Based on Zajac's Subsequent Testimony*

While their initial post trial motions were under advisement, Poppers and Madsen filed supplemental motions for a new trial based upon "newly-discovered" evidence.[3] For the following reasons, these motions are denied.

In order to secure a new trial on the basis of newly-discovered evidence, the defendants must show that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had defendants exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *See, e.g., United States v. Hedman*, 655 F.2d 813, 814 (7th Cir.1981). The parties agree that Zajac's post-trial testimony at Crafton's administrative hearing satisfies factors (1) and (2). We agree with the government, however, that neither factor (3) nor (4) is satisfied.

■ The government is correct that Zajac's testimony concerning Madsen's role in the beating, when taken in context, is for the most part consistent with his trial testimony. The two major alleged inconsistencies were the omission of Madsen as a "kicker" of Moore and Zajac's testimony that Ridge—not Madsen—held Moore's head while Poppers kicked him. We adopt the government's analysis, *see* Government's Response to Madsen's Second Supplemental Motion at 3–5 as to the first alleged inconsistency. Taken in context, the omission appears inadvertent and minor. At worst, this omission is "merely impeaching," and would not "probably lead to an acquittal" on retrial. We view the second inconsistency the same way. That point was not crucial to the administrative hearing as it was not developed on direct or cross. The hearing focussed on Crafton, not Madsen or Ridge. Again, this inconsistency is merely impeaching.

■ The only different thing Poppers adds in his supplemental motion is that the three-member Sauk Village Board of Fire and Police Commissioners, in its February 1, 1986 findings and decision reinstating acquitted co-defendant Officer William Crafton,[4] characterized Zajac's testimony as not credible. This finding does not warrant disturbing the jury's verdict or granting a new trial. While Zajac's credibility was certainly at issue in the trial, the jury was entitled to, and did, believe Zajac. The jurors heard more extensive testimony and evidence from more sources than did the Village Board, with exhaustive cross-examination by defendants' excellent trial counsel. That the three Sauk Village Commissioners later disagreed with the twelve jurors is, we believe, inconsequential. After hearing Zajac testify in court, we fully concur with the conclusion of the jury that Zajac's testimony was credible. The findings of the Sauk Village Commissioners after the trial in this Court, based on the sketchy evidence presented to them in a proceeding not primarily concerned with Poppers' culpability, offer nothing to warrant the overturning of the jury's evaluation of Zajac's testimony.

In short, the defendants' supplemental motions for a new trial are denied. It is so ordered.

---

post trial motions. The defendants make other allegations in their motions for acquittal and for a new trial which we find without merit.

**3.** Although the record is not explicit as to this point, we have treated these motions as having been adopted by Ridge and Crose as well.

**4.** The jury found Crafton not guilty of the charges against him in Counts I and II of the indictment.