UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy FULBRIGHT, Defendant-Appellant.

No. 86–3055.

United States Court of Appeals,
Fifth Circuit.

Nov. 12, 1986.

---

Bryan Pedeaux, Richard B. Stricks, New Orleans, La., for Fulbright.

Cynthia R. Hawkins, Asst. U.S. Atty., John P. Volz, U.S. Atty., Thomas Watson, Harry W. McSherry, Jr., Asst. U.S. Attys., New Orleans, La., for the U.S.

Before GARZA, DAVIS and JONES, Circuit Judges.

GARZA, Circuit Judge.

This appeal arises from appellant Roy Fulbright's challenge of his conviction for

perjury before a federal grand jury pursuant to 18 U.S.C. § 1623.[1] Fulbright was found guilty after a trial by jury and, upon his conviction, was sentenced to a prison term of three years. Fulbright now argues that the evidence was legally insufficient to sustain his conviction and that the district court improperly considered his past activities in arriving at a sentence. This Court's review of the record reveals that the evidence was sufficient to sustain the conviction for perjury. The answers given by Fulbright before the federal grand jury were materially false and the knowingly false declarations were proven beyond a reasonable doubt at trial by the prosecution. Moreover, the district court acted within the bounds of the law in considering Fulbright's past activities while determining an appropriate sentence of incarceration. For the reasons herein stated we affirm the conviction below.

The record discloses that in March of 1985, the Drug Enforcement Administration (DEA) received information from sources that Roselia Fajardo, Norris Anderson and Carmella Herrera would be travelling to New Orleans, Louisiana from Belize, Central America to pick up proceeds from a previous drug smuggling transaction. Based on intelligence reports, the DEA learned that one of these persons would leave New Orleans with a large amount of currency. On March 19, Fajardo gave Anderson cash and cashier's checks and told him to take it to Belize without declaring it to United States Customs agents. Customs and DEA agents set up surveillance at the New Orleans International Airport for persons illegally transporting United States funds. Anderson and Herrera filled out the requisite Customs forms, stating that they did not have in excess of $10,000 on their persons. They were detained, consented to a search,

and it was determined that Anderson had approximately $61,000 in cash and negotiable instruments on his person. Anderson was arrested and he subsequently agreed to plead guilty to a misdemeanor and cooperate with the Government. Anderson and Herrera offered the following information regarding appellant Fulbright's role in the venture.

While in New Orleans, Fajardo stayed at a friend's home, while Anderson and Herrera stayed at the Rodeway Inn in Kenner, Louisiana. On March 17, Fajardo told Anderson that she was expecting a visitor and had arranged to meet him in Anderson's room at the Rodeway Inn. That morning, an individual, later identified as Fulbright, arrived at Anderson's room. Fulbright had flown into New Orleans International Airport earlier that day. When Anderson asked Fulbright if he was supposed to meet Fajardo, Fulbright acknowledged that he was.

Fajardo arrived shortly after Fulbright and she told Anderson and Herrera that she wished to speak to Fulbright alone. Anderson and Herrera went to the motel coffee shop, and were summoned back to the motel room by Fajardo approximately thirty minutes later. When they returned, Fajardo told Anderson that there was $9,500 in cash on the bed and asked Anderson to count it. Anderson did so after he drove Fulbright to the airport where Fulbright returned to Arkansas. Anderson and Herrera testified that the money was not theirs and was not in the room before Fulbright's visit.

On March 18, Fajardo and Anderson went to five New Orleans banks and converted the cash into cashier's checks. Fajardo then told Anderson that she would be meeting Fulbright again at Anderson's motel room. Fajardo and Fulbright met in the motel room alone for about fifteen minutes

---

1. 18 U.S.C. § 1623(a) provides:

Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under Section 1746 of Title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

while Anderson and Herrera went to the same coffee shop. When Anderson and Herrera returned there was a brown paper bag on the bed that was not there before Fulbright's visit. Fajardo then left with the bag. The following day, Fajardo gave Anderson the cash and cashier's checks and instructed him to carry the funds to "Michael" in Belize, without declaring it at Customs. On March 19, Anderson was arrested at the airport.

On July 12, pursuant to an investigation, Fulbright appeared before a federal grand jury in New Orleans. Fulbright admitted going to New Orleans once in the spring of 1985 to talk to a man named "Al" about a job as a pilot to spray crops. Fulbright testified that Al did not appear so he left New Orleans that same day. Fulbright denied ever being in New Orleans on any other occasion or for any other purpose. Fulbright denied meeting or knowing Fajardo. The perjurious statements are as follows:

Q. Mr. Fulbright, didn't you meet with Roselia Fajardo when you were in New Orleans in March?

A. Who?

Q. Roselia Fajardo.

A. Sir, I've never heard that name.

Q. Didn't you meet with a lady at a hotel here in New Orleans on several occasions when you came down?

A. No. I did not.

Q. Didn't you bring her some money?

A. No. I did not.

     \*    \*    \*    \*    \*    \*

Q. So you took a flight out the same day you took a flight in?

A. Yes.

Q. And that was the only day you had been in New Orleans?

A. Yes.

Q. You didn't spend the night in New Orleans?

A. No. I did not.

Q. You didn't come back the next day?

A. No.

On August 9, Fulbright was charged by the grand jury in three counts of a six count indictment with conspiracy to import marijuana, conspiracy to possess with the intent to distribute marijuana, and perjury before a federal grand jury.[2] On November 25, the jury found Fulbright guilty of the perjury charge only, in violation of 18 U.S.C. § 1623. On March 19, 1986, Fulbright was sentenced to a term of imprisonment of three years and fined fifty dollars. During the course of the proceedings, the district court was informed that Fulbright had been involved in two prior drug-related incidents. In both of these instances Fulbright had been given immunity from prosecution for his cooperation. At sentencing, the district court relied on those past acts in concluding that, because the present case was Fulbright's third involvement, incarceration for three years was warranted. The grounds for this appeal involve the legal sufficiency of the evidence used to form the basis of the perjury conviction, and the district court's consideration of Fulbright's past involvements in fixing the sentence of three years imprisonment.

### The Perjury Issue

Fulbright contends that the three perjurious declarations were literally true, and therefore cannot form the basis of a perjury conviction. The evidence shows that Fulbright met with Fajardo in Kenner, Louisiana rather than in New Orleans. Fulbright is correct in his argument that Kenner is a distinct city from New Orleans. Kenner is a suburb of New Orleans, but it lies within the greater New Orleans metropolitan area. The New Orleans Interna-

2. Co-defendant Fajardo was indicted for conspiracy to transport funds without complying with IRS, Treasury and Customs regulations requiring the disclosure of funds in excess of $10,000, conspiracy to import marijuana, and conspiracy to possess marijuana with the intent to distribute the drug. Fajardo was found guilty of three counts of conspiracy to transport funds without complying with IRS, Treasury and Customs regulations. She was given a sentence of incarceration of four years. The lower court's decision with regard to Fajardo is not before this Court.

tional Airport is in Kenner. Literally, Fulbright argues, he did not make any false declarations because: 1) he did return to Kenner, but not to New Orleans; 2) he did not meet with a lady at a hotel in New Orleans; and 3) he did not bring money to Fajardo in New Orleans.

Fulbright relies on *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), to support his challenge. In *Bronston*, the Supreme Court reversed an 18 U.S.C. § 1621 perjury conviction where the defendant's responses to the grand jury were literally true, but unresponsive. The *Bronston* Court held that the federal perjury statute does not reach a literally true but unresponsive answer, even if the witness intends to mislead his questioner and even if the answer is arguably false by negative implication.

■■■ However, as this Court has noted, "an answer that is responsive and false on its face does not come within *Bronston's* literal truth analysis simply because the defendant can postulate unstated premises of the question that would make his answer literally true." *United States v. Cuesta*, 597 F.2d 903, 920 (5th Cir.) (citations omitted), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). The jury could reasonably conclude that the name "New Orleans" refers to the greater New Orleans metropolitan area, which includes Kenner. There is no reason to believe that Fulbright or the questioner intended to limit the name "New Orleans" to exact geographical dimensions. Additionally, in contrast to what Fulbright now argues, he testified to being in "New Orleans" while visiting a hotel by the airport. This statement is sufficient to establish that Fulbright understood "New Orleans" to encompass its outlying suburbs. For purposes of jury determination in interpreting allegedly perjurious statements, words that are clear on their face are to be understood in their common sense and usage. *Government of Canal Zone v. Thrush*, 616 F.2d 188, 191 (5th Cir.1980); *United States v. Crippen*, 570 F.2d 535, 537 (5th Cir.

1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).

■■ Fulbright testified before the federal grand jury that he was in New Orleans on only one occasion for a matter of hours. He denied being in New Orleans for more than one day. Our review of the record indicates that Fulbright was in New Orleans on March 17 and 18. Moreover, Fulbright did meet with Fajardo in a hotel room during his stay. Fulbright's statements that he was in New Orleans on only one date and that he did not meet with a lady in a hotel room during his visit were false, and the evidence was sufficient for the jury to find that Fulbright knowingly made false statements. "In order to prove that a defendant committed perjury, the government must prove that his statements were false and that he did not believe them to be true." *United States v. Forrest*, 623 F.2d 1107, 1110 (5th Cir.), *cert. denied*, 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980). In *Bronston*, the statements to the grand jury were unresponsive, deliberately misleading but literally true. In this appeal, Fulbright's statements to the grand jury were responsive but deliberately false. *See United States v. Adi*, 759 F.2d 404, 410 (5th Cir.1985); *United States v. Cuesta*, 597 F.2d 903, 920 (5th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979).

### The Sentencing Issue

At sentencing, Fulbright's counsel argued that Fulbright's cooperation in an ongoing investigation in Arkansas should stand in mitigation of his punishment. The district court reasoned that it would have been moved by Fulbright's cooperation, but he had been involved in matters under DEA investigation on two prior occasions. Fulbright had been arrested in Arkansas in 1981 and had given testimony in Florida in 1984 in connection with DEA investigations. The United States Attorney's Office for the Eastern District of Arkansas and the Southern District of Florida granted Fulbright immunity for his testimony relat-

ing to those instances.[3] The district court found that Fulbright's arrest in Arkansas and his testimony in Florida were indicative of his involvement on both occasions. Because this was Fulbright's "third time around" the court found that his cooperation in an ongoing investigation in Arkansas did not mitigate punishment.

■ It is Fulbright's contention that, under the principles enunciated in *United States v. Weiss*, 599 F.2d 730 (5th Cir.1979), the existence of the immunity agreements precludes the use of such evidence at any stage of any prosecution brought against Fulbright. Immunity agreements are in the nature of contracts and are to be construed accordingly. *Id.* at 737. Fulbright concludes that because the contracts of immunity have been breached, the sentence imposed should be vacated and the matter remanded to the district court for resentencing. We disagree.

■ The district court held that evidence of Fulbright's arrest in Arkansas was not immunized evidence because the Government had proof of the arrest, independent of his testimony, and therefore his testimony was not being used against him. When the district court took into account Fulbright's Arkansas arrest of 1981 for the purpose of sentencing, the court did not rely on immunized evidence. It is well-settled in this Circuit that a sentencing court may consider a prior arrest in imposing sentence, even though the defendant was not convicted for the prior act. *United States v. Garcia*, 693 F.2d 412, 416 (5th Cir.1982).

■ As the district court noted, both the Arkansas and Florida immunity agreements provided Fulbright with "use immu-

nity" for his cooperation. "Use and derivative use immunity" prohibits a prosecutor from using testimony, or any other information directly or indirectly derived from such testimony, against the defendant. Use immunity insures that the individual's testimony will not lead to the infliction of criminal penalties based on the testimony. *Kastigar v. United States*, 406 U.S. 441, 443, 453, 92 S.Ct. 1653, 1655, 1661, 32 L.Ed.2d 212 (1972). However, although an individual has been granted use immunity, this does not prevent the Government from using evidence against him where the evidence does not result from his testimony. Evidence obtained from a legitimate independent source may be used against the individual. *Id.* at 460–62, 92 S.Ct. at 1664–65.

Pursuant to Fulbright's motion to suppress, the district court held that evidence concerning Fulbright's Florida grand jury testimony in 1984 was inadmissible at trial for this would involve using Fulbright's testimony against him in violation of the Florida immunity agreement. At sentencing, however, the district court took into account the fact that Fulbright gave testimony and was granted immunity. The district court reasoned that since Fulbright was given immunity for his 1984 Florida grand jury testimony, he must have been involved in an offense. On this record there is no independent evidence linking Fulbright to an offense in Florida in 1984. Fulbright contends that the use of immunized evidence against him for the purpose of sentencing constituted a breach of the Government's immunity agreement and violated his fifth amendment right not to incriminate himself.

**3.** On June 9, 1981, Fulbright was arrested in Arkansas for possession of marijuana. The immunity agreement, dated July 6, 1981, provides:

If he is totally truthful in his cooperation and testimony concerning the case which resulted in his arrest and other cases about which he is aware, the United States will not use his cooperation and testimony against him nor will it seek his prosecution.

The second immunity agreement, dated January 18, 1984, was entered into in Florida during an

ongoing DEA investigation. That agreement provides:

Except as set forth above, no testimony or information provided by Roy Fulbright pursuant to this agreement and no leads from such testimony or information may be used against him in any criminal proceeding, nor may he be charged with any other violations of federal criminal law which result from direct or indirect testimony or leads provided by Roy Fulbright.

We rule that a district court's sentencing discretion under 18 U.S.C. § 3577 is so broad that it was perfectly proper for the district court to consider the Florida incident in arriving at an appropriate sentence. The federal sentencing statute provides:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3577. This statute invests the sentencing judge with wide discretion in imposing sentence. The judge may undertake a broad inquiry, "largely unlimited either as to the kinds of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). It is well-settled that the court may take into account evidence of crimes for which the defendant has not been convicted. *United States v. Dickson,* 712 F.2d 952, 955 (5th Cir.1983). Additionally, an examination of the immunity agreements reveals that they do not preclude a judge considering a sentence for a subsequent offense committed by Fulbright from considering the events which Fulbright had engaged in.

As a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability. Such information must bear some rational relationship to the decision to impose a particular sentence. The district judge did not violate Fulbright's due process protections in considering Fulbright's past acts, and the information presented by Fulbright's counsel does bear a rational relationship to the sentence of three years incarceration. So that the punishment fits not only the crime but the defendant as well, a sentencing judge must have "the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) (judge may consider evidence that defendant committed other crimes of which he had not been convicted). *See Horowitz v. Henderson,* 514 F.2d 740, 741 n. 1 (5th Cir.1975). A sentencing judge has wide discretion to consider all relevant matters of a defendant's past conduct and character in arriving at and imposing an appropriate punishment.

For the reasons above stated, the judgment of the district court is

AFFIRMED.