GRISBAUM, Judge.
On August 28, 1986, the defendant, Raul Marrero, was charged by grand jury indictment with perjury in violation of La.R.S. 14:123. This perjury was allegedly committed when Marrero testified before a grand jury on January 30,1986. He was arraigned on September 30, 1986 and pled not guilty. After a bench trial he was found guilty as charged. A presentence investigation followed, and, on June 2, 1987, a motion for new trial was filed and denied; the defendant was sentenced to serve 11 *204 months in Parish Prison, which sentence he now appeals. We reverse.
FACTS
Raul Marrero allegedly perjured himself when he testified during a grand jury investigation on January 30, 1986. Discovery proceedings related to the perjury charge were held on February 17, 1987, and counsel for the State was asked to clarify the purpose of the 1986 grand jury investigation. Counsel stated that the key focus of the investigation was the sexual abuse of which Marrero had been accused. Marrero claimed his estranged wife was the source of the accusations of sexual abuse and that she had threatened him with such accusation if he did not divide the community in their impending divorce as she wished. This alleged extortion was also a subject of inquiry at the grand jury investigation. Lastly, the investigation involved allegations that the Jefferson Parish Sheriffs Office showed favoritism to Raul Marrero by delaying or impeding the investigation of the complaints of sexual abuse; this favoritism was allegedly shown because of Marrero’s involvement with the Jefferson Parish Sheriff’s Office.
The record shows that for several years, Raul Marrero had a reserve deputy’s commission in the Jefferson Parish Mounted Division, Reserve Unit, working crowd control during the carnival season. As a member of the Mounted Division, he wore a uniform and a badge (a gold shield), carried a gun and handcuffs, and had the authority to make arrests and issue warrants and attachments. In December 1985, when word got out about the impending grand jury investigation, Raul Marrero’s reserve commission in the Mounted Division was picked up by Chief Moll, as well as his gold shield, or badge, and gun. Marrero was then placed in the Jefferson Parish Posse Division, which issues an ID instead of a commission. Like the Mounted Division, the Posse had its own uniform and badge (a star) and occasionally carried guns. The record shows that the Posse and the Mounted Division are completely distinct organizations. Marrero was not allowed to carry a gun as a Posse member because he could not shoot a qualifying score at the shooting range. He remained a member of the Louisiana Sheriff's Task Force for which he also had a badge; to be on the Task Force, one must be a deputy.
At the grand jury investigation on January 30, 1986, Marrero gave the following responses to the following questions:
Q. Do you have any associations at all with the Jefferson Parish Sheriff’s Office?
A. Not with the Parish. I belong to the sheriff’s posse.
Q. Do you have a commission; do you carry a badge and do you carry a gun?
A. I do not have a commission. I do not have a commission; I do not carry a gun; I do have an ID, not a badge.
Q. Are you paid by the sheriff’s office in any capacity?
A. No, sir.
These statements form the basis for the perjury conviction.
Raul Marrero is an illiterate man whose native tongue is Spanish;, he speaks only broken English. An interpreter was used to obtain his testimony during the grand jury investigation. Marrero waived his right to a trial by jury.
ASSIGNMENTS OF ERROR
The defendant has failed to file assignments of error as required by La.C.Cr.P. art. 844; however, in brief, five assignments of error are designated as follows:
(1) Whether the trial court erred in holding that Raul Marrero is guilty of perjury;
(2) Whether the trial court erred in holding that peijury was committed despite the uncontroverted fact that no lie was told by the defendant;
(3) Whether the trial court erred in holding that perjury was committed despite the lack of showing by the State that the accused knew the statement to be false;
(4) Whether the trial court erred in holding that perjury can be committed by dissembling; and
*205 (5) Whether the trial court erred in holding that Raul Marrero committed perjury in failing to volunteer additional information to the grand jury.
We note that all of the assignments of error center around one legal principle— whether there was sufficient evidence to convict the defendant. Accordingly, we will handle the five assignments of error in globo.
ANALYSIS
La.R.S. 14:123 provides:
Perjury is the intentional making of a false written or oral statement in, or for use in, a judicial proceeding, or any proceeding before a board or official, wherein such board or official is authorized to take testimony. In order to constitute perjury the false statement must be made under sanction of an oath or an equivalent affirmation, and must relate to matter material to the issue or question in controversy.
It is a necessary element of the offense that the accused knew the statement to be false; but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false.
We are aided in our review by our jurisprudence, which states that for a statement to constitute perjury it must relate to a matter material to the issue or question in controversy. See State v. West, 419 So.2d 868 (La.1982). The materiality of false testimony is a matter of law for determination by the court, not a factual question for determination by the jury. State v. Occhipinti, 358 So.2d 1209 (La.1978). The government has the burden of proving the materiality of the false statement. In United States v. Giarratano, 622 F.2d 153,156 (5th Cir.1980), the test for materiality was set out as follows: “The test for materiality is a broad one — whether the false testimony was capable of influencing the tribunal on the issue before it. Furthermore, we have held that ‘the statements need not be material to any particular issue but may be material to any proper matter of inquiry.’ ” (citations omitted).
The trial court noted that the only controverted elements of the crime of perjury were materiality and falsity. The court addressed the issue of materiality as follows:
A purpose as was stated, uncontroverted of investigation of the grand jury was did Raul Marrero receive preferential or preferred treatment because he was a deputy? Now, with that question before the grand jury as part of their potency or powers to investigate, it became essential to determine if in fact he was a deputy. The questions then certainly were material to the investigation before the grand jury and the statements were made during that investigation, (emphasis added).
We agree the questions were material.
Therefore, the outcome of this case depends upon whether Marrero’s statements were true or false. Falsity is also an essential element under the federal perjury statute. As there is little state jurisprudence focusing on whether a statement is true or false for the purpose of a perjury conviction, an examination of the more abundant federal jurisprudence on this issue is helpful. The federal definition of perjury, found in 18 U.S.C.A. § 1623(a), reads as follows:
Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permit ted under section 1746 of title 28, United States Code [28 USCS § 1746]) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
This statute was interpreted by the United States Supreme Court in Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), when it held that the general federal perjury statute (18 U.S.C. *206 A. § 1621 at that time) does not extend to a witness’ literally true, but unresponsive answer, even if the witness intends to mislead his questioner. See also United States v. Abrams, 568 F.2d 411 (5th Cir.1978), cert. denied, 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).
In United States v. Cuesta, 597 F.2d 903, 920 (5th Cir.1979), cert. denied, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979), the court stated:
However, an answer that is responsive and false on its face does not come within Bronston’s literal truth analysis simply because the defendant can postulate unstated premises of the question that would make his answer literally true. United States v. Kehoe, 562 F.2d 65, 68-69 (1st Cir.1977). ... Bronston does not deal with the situation where a defendant has given a “yes or no” answer, the truth of which can be ascertained only in the context of the question posed. United States v. Chapin, 169 U.S.App. D.C. 303, 309, 515 F.2d 1274,1280 (1975). Bronston considered only the situation where a declarative statement made to a grand jury was true no matter what the context in which it was given.
See also United States v. Fulbright, 804 F.2d 847, 850-51 (5th Cir.1986) and United States v. Bell, 623 F.2d 1132 (5th Cir.1980).
The trial court addressed the element of falsity in Marrero by stating:
Black’s Law Dictionary tells us falsehood is an assertion or statement known to be untrue which is intended to deceive and can be committed by dissimulation. As it’s said regarding number 4, the materiality element, the purpose of the grand jury as opposed to the petit jury investigation was to determine if preferential treatment was received by Raul Marrero because he was a deputy and therefore it was crucial to determine if in fact he was a deputy when the alleged preferential treatment took place. The preferential treatment took place long before January 30th [the date of the grand jury testimony]. Black’s Law Dictionary defines dissembling as the concealing by assuming some false appearance. Now, the purpose of a false statement is to conceal or deceive. Dissemble is to conceal or deceive. In a jury trial, we charge the jury to use their common sense and everyday experiences as triers of the fact. The State has shown a series of events leading up to the Marrero ultimate statement that he is a posse member only. The court feels that there is sufficient evidence to demonstrate Mr. Marrero’s statements are such as to constitute perjury within the meaning of the law.
The facts appear to parallel those of Cuesta, Bell, and Fulbright in that the truthfulness of the answer can only be determined by first looking to the question. When the grand jury examiner first asked Marrero if he had “any associations at all with the Jefferson Parish Sheriff’s Office,” Marrero replied, “Not with the Parish. I belong to the sheriff’s posse.” Then Marrero was asked, “Do you have a commission; Do you carry a badge and do you carry a gun?” and he said, “I do not have a commission. I do not have a commission; I do not carry a gun; I do have an ID, not a badge.” In asking whether Marrero currently had a commission, a badge, and a gun, was the examiner referring only to the Jefferson Parish Mounted Division’s badge, commission, and gun, or was he asking Marrero if Marrero currently had any badge, any gun, or any commission? The court in Bell, supra, at 1136 noted that
Although there appears to be some authority to the contrary,5 the prevailing view is that the defendant’s understanding of the question is a matter for the jury to decide. See United States v. Matthews, 589 F.2d 442, 445 (9th Cir.1978), cert. denied, 440 U.S. 972, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979); United States v. Crippen, 570 F.2d 535, 538 (5th Cir.1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); United States v. Williams, 552 F.2d 226, 229 (8th Cir.1977); United States v. Slawik, 548 F.2d 75, 86 (3d Cir.1977); United States v. Corr, 543 F.2d 1042, 1049 (2d Cir.1976); United States v. Williams, 536 F.2d 1202, 1205 (7th Cir.1976); United States v. Long, 534 F.2d 1097, 1101 (3d Cir.1976); United States v. Parr, 516 *207 F.2d 458, 470 (5th Cir.1975); United States v. Hilliard, 436 F.Supp. 66, 71 (S.D.N.Y.1977).
Footnote 5, Bell, supra, at 1136 reads:
5. A few courts appear to take the position that one may never be convicted of penury where the question could have been interpreted more than one way. See United States v. Tonelli, 577 F.2d 194, 200 (3d Cir.1978); United States v. Wall, 371 F.2d 398, 399-400 (6th Cir.1967); United States v. Clifford, 426 F.Supp. 696, 704 (E.D.N.Y. 1976).
The court in Bell, supra, at 1136-37 then stated:
The jury’s resolution of this issue is not, however, immune from appellate review. If, having reviewed the evidence in the light most favorable to the government, we are convinced that “a reasonably minded jury must have a reasonable doubt as to the existence of the essential elements of the crime charged,” United States v. Reynolds, 511 F.2d 603 (5th Cir.1975), the conviction may not stand. Glosser v. United States, 315 U.S. 60, 80 [62 S.Ct. 457, 469, 86 L.Ed. 680] (1942); United States v. Dawson, 576 F.2d 656 (5th Cir.1978), cert. denied, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979); United States v. Barrera, 547 F.2d 1250, 1255 (5th Cir.1977).
In a prosecution under § 1623, the government must establish, inter alia, that the statement was false and that the defendant knew it was false. By offering an interpretation of the question that is at least as reasonable as the government’s interpretation, the defendant puts into issue the sufficiency of the evidence as to both of the essential elements. Obviously, if after conviction the defendant offers “a contrive hypertechnical or lame interpretation of his answer,” United States v. Clifford, 426 F.Supp. 696, 704 (E.D.N.Y.1976), the jury’s decision must be left undisturbed. See United States v. Wetterlin, 583 F.2d 346, 354 (7th Cir.1978), cert. denied, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979); United States v. Kehoe, 562 F.2d 65, 69 (1st Cir.1977). This not such a case. Having considered Bell’s answer in the context in which it was given, we are firmly convinced that the jury could not have found him guilty beyond a reasonable doubt.
Smith first asked Bell whether he brought the records with him. When Bell answered no, he was advised of his Fifth Amendment rights. Next, Bell was asked why he had not brought the records and again whether he had the records. He answered both questions by asserting that his records were personal. Then came the crucial question and answer. Unfortunately, the crucial question was not framed so as to make it clear that Smith was no longer interested in whether Bell had brought the records with him, but, rather, wanted to know if there were any such records anywhere in the world. The government’s position as to the import of the question is inconsistent with the two questions asked next:
Q. You have none?
A. No, sir.
Q. Why don’t you have them?
Bell may very well have known what the government now says it was seeking. However, the evidence does not establish that fact. “ ‘[Defendants may not be assumed into the penitentiary.’ ” United States v. Tonelli, 577 F.2d 194, 200 (3d Cir.1978) (quoting United States v. Brumley, 560 F.2d 1268 (5th Cir.1977)); see In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Since we find that the evidence was insufficient to convict, the proper remedy is to direct the trial court to enter a judgment of acquittal. See Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). (emphasis added and footnote omitted).
The Supreme Court in Bronston, supra, 93 S.Ct. at 600 addressed the policies underlying its interpretation of the federal perjury statute as follows:
It is no answer to say that here the jury found that petitioner intended to mislead his examiner. A jury should not *208 be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether “he does not believe [his answer] to be true.” To hold otherwise would be to inject a new and confusing element into the adversary testimonial system we know. Witnesses would be unsure of the extent of their responsibility for the misunderstandings and inadequacies of examiners, and might well fear having that responsibility tested by a jury under the vague rubric of “intent to mislead” or “perjury by implication.” The seminal modem treatment of the history of the offense concludes that one consideration of policy overshadowed all others during the years when perjury first emerged as a common-law offense: “that the measures taken against the offense must not be so severe as to discourage witnesses from appearing or testifying.” Study of Perjury, reprinted in Report of New York Law Revision Commission, Legis.Doc. No.60, p. 249 (1935).
Finally, Bronston, supra, 93 S.Ct. at 601 noted that
The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry. United States v. Wall, 371 F.2d 398 (CA6 1967); United States v. Slutzky, 79 F.2d 504 (CA3 1935); Galanos v. United States, 49 F.2d 898 (CA6 1931); United States v. Cobert, 227 F.Supp. 915 (SD Cal.1964).
and added “[pjrecise questioning is imperative as a predicate for the offense perjury.” Bronston, supra, 93 S.Ct. at 602.
Considering our standard of review mandated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) regarding sufficiency of the evidence, recently enunciated by this Court in State v. Bruce, 472 So.2d 79 (La.App. 5th Cir.1985), we, as a reviewing court, must determine that the record evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational juror that the defendant is guilty beyond a reasonable doubt of committing a specific crime. The trial court found the defendant guilty of perjury because his answers to the questions posed deceived the grand jury, and it concluded that his statements were therefore false. We note, commonsensibly, a statement that intentionally or accidentally misleads is not necessarily false. Falsity is an essential element of the crime of perjury, not “capacity to mislead.” Marrero was not compelled to elaborate; he was only compelled to truthfully answer the question asked, which he did, to the best of his ability. Accordingly, the evidence, viewed in the light most favorable to the prosecution, is insufficient to prove the essential element of falsity beyond a reasonable doubt.
For the reasons assigned, the conviction and sentence are reversed.
REVERSED.