WILLIAMS, J.
I,The defendant, Morgan King, was charged by biil of information with perjury and filing a false public record, violations of LSA-R.S. 14:123 and LSA-R.S. 14:133. Following a jury trial, the defendant was convicted as charged. He was sentenced to serve four years in prison at hard labor for each count; the sentences were ordered to be served concurrently. For the following reasons, we affirm the defendant’s convictions and sentences.
FACTS
On May 17, 2006, a Shreveport police officer, Freddie Clinton, called in a “10-18”[1] to dispatch, requesting immediate assistance on Broadway Avenue in Shreveport, Louisiana. Officer Clinton reported that a woman, who was later identified as Arlecia McDonald, was being chased in her vehicle by a man who was later identified as McDonald’s ex-boyfriend, Raymond Darnell. Ultimately, Darnell, who was driving a green sports utility vehicle (“SUV”), forced McDonald from the road. McDonald’s car struck a telephone pole and caught fire. Darnell exited the SUV, leaving the vehicle traveling on the road unmanned, and began chasing McDonald with a shotgun. McDonald ran to Officer Clinton, yelling that Darnell was carrying a shotgun. Officer Clinton ordered Darnell to stop and to put his weapon down or on the ground. Darnell fired at least one shot at McDonald and Officer Clinton. Officer Clinton returned fire as he and McDonald took cover near or behind his police vehicle. While Officer Clinton was reloading his weapon, Darnell ran around the front of the officer’s vehicle, shot McDonald and began striking her with the shotgun. Officer Josh |2Feliciano arrived on the scene and fired several gun shots at Darnell, striking him in the chest and knocking him to the ground. After a struggle, the two police officers managed to handcuff Darnell.
Meanwhile, the defendant, then a Shreveport police officer, responded to the 10-18 call. Videotapes admitted into evidence showed when the defendant arrived *207 on Broadway Avenue, he did not immediately drive up to the scene of the shooting. Instead, after he had heard several gunshots, he waited at a distance down the street until the shooting ceased. When the defendant finally drove to the scene, he activated his emergency police lights and exited his vehicle. He quickly walked around the scene, observed McDonald lying on the ground bleeding and Officers Clinton and Feliciano struggling to subdue Darnell. The defendant ran back to his police vehicle and drove away. He never attempted to assist the officers or render aid to McDonald. Additionally, the defendant never filed a police report to document his presence at the scene of the shootings. In fact, he prepared a “stoolie” sheet,[2] in which he reported that he was in another area of the city at the time of the incident. The Shreveport Police Department (“SPD”) later terminated the defendant for his actions.
Subsequently, Darnell was convicted of one count of attempted first degree murder and one count of attempted second degree murder.[3] ^Following his conviction, Darnell filed a motion for new trial, alleging that a third police officer, the defendant, was a witness to the shooting. Darnell argued that the videotape from the defendant’s dash camera contained exculpatory evidence which the state had failed to turn over to Darnell prior to his trial.[4]
On February 12, 2007, the defendant was subpoenaed to testify at the hearing on Darnell’s motion for new trial. During the hearing, the defendant testified that he activated his emergency lights as he turned onto Broadway Avenue. He also testified that he waited by Darnell’s SUV because he believed Officers Clinton and Feliciano were shooting at the SUV. The defendant further testified that he left the scene because Darnell was being handcuffed and he believed the scene was under control. He stated that after he left Broadway Avenue, he radioed dispatch to inform the officers on the scene that he was responding to another call. The defendant claimed that Captain Larry Lewis had authorized him to leave the scene of the shooting because protocol required him to obtain permission prior to leaving a scene. The defendant also testified that when he left the scene, he saw that the Shreveport Fire Department had been dispatched and emergency assistance was in close proximity to the scene. Additionally, the defendant testified that he did not write a police report because he was not directed to do so.
|4Puring cross-examination, the defendant was shown the videotapes from the dash cameras of the vehicles operated by Officers Clinton and Feliciano. The defendant admitted that he was the police officer depicted in the videotapes. Much of *208 the defendant’s testimony was directly contradicted by the videotapes and the testimony of several of his superior police officers. Specifically, the videotapes showed: (1) the defendant did not activate his emergency lights as he turned onto Broadway Avenue; he did not turn his lights on until he arrived at the scene of the shooting (after the shooting stopped); (2) the defendant did not wait by Darnell’s SUV during the shooting; Darnell’s vehicle had already left the roadway at the time of the shooting; (3) the fire department was not in the immediate vicinity when the defendant left the scene; Officer Clinton was heard requesting the fire department to provide assistance after the defendant left the scene; (4) Darnell was not in handcuffs when the defendant left the scene; the officers were still struggling to subdue Darnell when the defendant walked away.
Additionally, Captain Lewis testified that he responded to Officer Clinton’s call and was the supervising officer on the scene that night. Captain Lewis also testified that he never had contact with the defendant that night and never gave the defendant permission to leave the scene.
The evidence also showed that the defendant prepared a stoolie sheet, documenting his activities that evening. The defendant’s stoolie sheet did not mention his presence at the scene of the shooting on Broadway Avenue. Instead, the defendant documented that he was on Dan-dridge Street at the jfitime of the crime. The defendant testified that his stoolie sheet was “incomplete” because it did not indicate that he was at the scene of the shooting. He explained that, in drafting his stoolie sheet, he used the radio calls made by him during his shift, via a computer, as a reference. He stated that the computer did not show his presence on Broadway Avenue that day; therefore, he did not document it. When questioned about his failure to complete a police report that night, the defendant testified that he made a “mistake” and that his superior officers did not direct him to write a police report. The defendant denied deliberately concealing the fact that he was at the scene of the shooting, and he maintained that his testimony was truthful.
On April 11, 2007, the state filed a bill of information charging the defendant with one count of perjury and one count of filing a false public record. On March 23, 2011, the state filed an amended bill of information charging the defendant with the same offenses.[5]
A jury trial commenced on March 24, 2011, and the defendant was convicted as charged. He was sentenced to serve four years at hard labor for each count; the sentences were ordered to be served concurrently. The trial court denied the defendant’s motions for post-verdict judgment of acquittal, new trial and reconsideration of the sentences.
The defendant now appeals.
DISCUSSION
Sufficiency of the Evidence — Perjury
RThe defendant contends the trial court erred in denying his motion for new trial, as the evidence was insufficient to prove that he was guilty, beyond a reasonable doubt, of perjury. He argues that when he testified in the Darnell matter, he “honestly and mistakenly” believed that he was being truthful. The. defendant maintains *209 that he did not intentionally make any false statements and that there is simply “a difference of opinion” regarding the events which took place on May 17, 2006.
In reviewing the sufficiency of the evidence to support a conviction, the reviewing court must determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes charged were proved beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert, denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The trier of fact is charged to make a credibility determination and |7may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert, denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607; State v. Lott, 535 So.2d 963 (La.App.2d Cir.1988).
LSA-R.S. 14:123 provides, in pertinent part:
A. Perjury is the intentional making of a false written or oral statement in or for use in a judicial proceeding!)] In order to constitute perjury the false statement must be made under sanction of oath ... and must relate to matter material to the issue or question in controversy.
|SB. It is a necessary element of the offense that the accused knew the statement to be false, but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false.
[[Image here]]
Materiality of false testimony is a matter of law to be determined by 'the court; it is not a factual question to be determined by the jury. State v. West, 419 So.2d 868 (La.1982); State v. Occhi *210 pinti, 358 So.2d 1209 (La.1978). To determine when a statement is “material,” Louisiana courts have turned to cases interpreting the federal perjury statute. See, State v. Louviere, 594 So.2d 1067 (La.App. 3d Cir.1992); State v. Marrero, 525 So.2d 203 (La.App. 5th Cir.1988). In State v. Marrero, supra, citing United States v. Giarratano, 622 F.2d 153, 156 (5th Cir.1980), the court explained:
The test for materiality is a broad one— whether the false testimony was capable of influencing the tribunal on the issue before it. Furthermore, we have held that ‘the statements need not be material to any particular issue but may be material to any proper matter of inquiry.’
In the instant case, the evidence adduced from the testimony of Assistant District Attorney Lea Hall, Jr., Officer Clinton, Officer Feliciano, Lieutenant Don Otis and Captain Larry Lewis shows that the defendant made false statements during a judicial proceeding, namely the hearing on Raymond Darnell’s motion for new trial. Specifically, Hall testified at length with regard to the defendant’s testimony at the hearing in the Darnell case. The defendant clearly stated that he activated his emergency lights and dash camera when he pulled around the corner from Cleveland Street to Broadway Avenue. Officer Feliciano testified that he only heard the 19defendant’s siren and saw the defendant’s emergency lights after the defendant drove up to the scene. The videotapes from the dash cameras of the vehicles of Officers Feliciano and Clinton support Officer Feliciano’s testimony. The defendant also testified at Darnell’s motion for new trial that the scene was secure when he left. However, both Officer Clinton and Officer Feliciano testified otherwise. Their testimony is corroborated by the videotape from Officer Felici-ano’s dash camera, which revealed that Officers Feliciano and Clinton were still struggling to secure Darnell when the defendant appeared then left the scene. Furthermore, the video reveals that McDonald was alone on the pavement suffering from a gunshot wound and the defendant never offered her assistance.
Additionally, the defendant testified that Captain Lewis, the defendant’s supervisor at the time, told him that he could leave the scene of the shooting. However, Captain Lewis testified that he never told the defendant he could leave. The defendant also stated that Lieutenant Otis told him that the videotape from his dash camera was “mysteriously” erased; however, at the defendant’s trial, Lieutenant Otis denied making that statement.
The defendant also testified at the hearing that he saw fire trucks and heard their sirens as he was leaving the shooting scene; however, the videotapes and the testimony of Officers Clinton and Feliciano directly contradicted the defendant’s testimony. Officer Clinton could be heard on the video requesting the fire department to respond immediately as the defendant left the scene. A fire truck did not arrive until approximately four |inminutes after the defendant left the scene.
After reviewing the record in its entirety, in a light most favorable to the prosecution, we find that sufficient evidence existed to prove that the defendant made multiple false oral statements in a judicial proceeding. The statements made by the defendant related to matter material to the issue in controversy, ie., whether the state withheld exculpatory evidence in the Darnell matter, thus entitling Darnell to a new trial. As a result of the defendant’s actions and subsequent attempt to cover up his actions, any evidence from his dash camera was ultimately destroyed. This assignment lacks merit. *211 Sufficiency of the Evidence — Filing a False Public Record
The defendant also contends the evidence was insufficient to support his conviction for filing a false public record. He argues that he did not intentionally conceal his whereabouts on the stoolie sheet dated May 17, 2006. He also argues that the state failed to prove that the stoolie report is a “public” document, as required for a conviction of filing a false public record.
LSA-R.S. 14:133 provides, in pertinent part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
[[Image here]]
(3) Any document containing a false statement or false representation of a material fact.
[[Image here]]
The elements of the crime of filing or maintaining false public records are: (1) the defendant files or deposits for record in any public office or with any public official, (2) with knowledge of its falsity, (3)
_|¿iany document containing a false statement or false representation of a material fact. State v. Odom, 2007-0516 (La.App.lst Cir.7/31/08), 993 So.2d 663; State v. Lafear, 2007-621 (La.App.3d Cir.10/31/07), 970 So.2d 98.
LSA-R.S. 14:133 does not require that the record filed be “public”; however, the record must be filed or deposited, with knowledge of its falsity, “in any public office or with any public officer.” State v. Salat, 95-0072 (La.App.lst Cir.4/4/96), 672 So.2d 333, writ denied, 96-1116 (La.10/4/96), 679 So.2d 1378. LSA-R.S. 14:133 is not limited to the filing of documents defined as “public records” in LSA-R.S. 44:1(A)(2).
In the instant case, during Darnell’s hearing, the defendant admitted that he filed a stoolie sheet with the SPD and that the stoolie sheet was incorrect. Lieutenant Cunningham testified that he investigated the defendant’s involvement in the shooting and verified that the defendant’s stoolie report falsely stated that the defendant was not on Broadway Avenue on the evening of May 17, 2006.
We find that the evidence was sufficient to support the defendant’s conviction for filing or depositing a false public record. The stoolie sheet, prepared by the defendant, did not document his presence at the shooting on Broadway Avenue. Rather, the defendant falsely documented that he was elsewhere at the time of the shooting. The defendant knew that the report contained false information, yet he deposited the report with the police department, a public office within the meaning of the statute. This assignment lacks merit.

_[i2Jury Instructions

Next, the defendant contends the trial court erred in failing to instruct the jury that the jury was required to find that the statements made by the defendant were material to the issue or question in controversy. The court instructed the jury as follows:
As respect to count number two, he on or about February 17, 2007 made false statements in a judicial proceeding, which [were] material to an issue in controversy.
However, the trial court failed to define “material” for the jury.
As stated above, “materiality of false testimony is a matter of law to be determined by the court; it is not a factual question to be determined by the jury.”
*212 State v. West, supra. Additionally, LSA-C.Cr.P. art. 841(A) provides:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The contemporaneous objection rule prevents “a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors which either could have been avoided or corrected at the time or should have put an immediate halt to the proceedings.” State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 368-69.
In the instant case, the record reveals that before the jury entered the courtroom, the state raised a legal issue concerning the perjury charge. Specifically, the state explained that it had uncovered jurisprudence which llsheld that the trial court, and not the jury, was charged with determining whether a defendant’s false statements were material to an issue or controversy in the underlying litigation. After a short break, the trial court noted its review of State v. West, supra, noted that the case was still “good law,” and found that it (the court) would determine whether the alleged false statements made by the defendant were material to an issue or question in controversy in the underlying proceeding. The defense then requested, and the state agreed, not to present the question of materiality to the jury in any regard. Thus, the jury would determine only whether the defendant made any false statements, and only then would the trial court determine whether the false statements were material to the issue in the underlying proceeding.
Following voir dire, the trial court again clarified that the jury would not determine the materiality of the defendant’s alleged false statement(s). The defense agreed not to object to questions asked by the state relating to the materiality because the state had an obligation to prove materiality for the trial court.
Our review of the record reveals that the defendant did not object to the jury instructions either prior to or during the jury deliberations. In fact, defense counsel specifically stated that the defense had no objection to the jury instructions. During the trial, the defendant undoubtedly chose not to object to the jury instructions because they were favorable to him (the instructions charged the jury with finding that the statements were material in order to convict the defendant of perjury). Therefore, the defendant cannot raise the issue now on appeal. See, LSA-C.Cr.P. art. 841(A). To 114allow the defendant to do so would undermine the purpose of Art. 841(A). This assignment lacks merit.
Evidentiary Ruling — Testimony of Assistant District Attorney Hall
The defendant contends the trial court erred in allowing Hall, the prosecutor in the Darnell matter, to testify during the defendant’s trial. The defendant argues that Hall was “upset” because Darnell had accused Hall of violating Brady, therefore, Hall set out to prove that the defendant lied during his testimony in the Darnell matter. The defendant also argues that the trial court erred in allowing Hall, who was an expert witness, to give an opinion regarding the defendant’s *213 guilt or innocence, in violation of LSA-C.E. art. 704.[6]
A prosecuting attorney is a competent witness, even in the dual role of prosecutor and witness. State v. Miller, 391 So.2d 1159 (La.1980). In State v. Miller, supra, a witness to a crime was called as a witness for the state. During his testimony, the witness denied that the defendant was one of the assailants. Thereafter, one of the assistant district attorneys handling the case took the stand as an impeachment witness. He testified that the witness, on two prior occasions, had identified the defendant as one of the assailants. After testifying, the assistant district attorney resumed his role as prosecutor. The Louisiana Supreme Court stated:
Of course district attorneys should avoid the dual role of prosecutor and witness. The general rule, governing all lawyers, prohibits testimony by attorneys who are [^engaged in the trial of the case [e]xcept in isolated circumstances. Even stronger reasons weigh against testimony by a prosecutor.
* * *
Here, however, even if we should find the ruling of the trial judge to have been erroneous, the error was harmless. Foremost, [the witness] himself indicated in his testimony that he said what he did because to do otherwise was dangerous. Next, the prosecution did nothing more than reveal facts which tended to impeach [the witnesses testimony.
[[Image here]]
We find that [the assistant district attorney]’s failure to withdraw from the trial after testifying did not prejudice the defendant.
Id. at 1163-64.
In State v. Wilson, 602 So.2d 779 (La.App. 2d Cir.1992), the testimony of a juvenile codefendant contradicted pretrial statements made to the prosecution. Thereafter, an assistant district attorney testified as an impeachment witness. This court held that the trial court did not err in allowing the assistant district attorney to testify, noting that the assistant district attorney “was not the prosecuting attorney and did not assume a dual role.” Id. at 782.
In the instant case, we must note that Hall was not the prosecuting attorney in the defendant’s trial; thus, he did not assume a dual role. Additionally, the defendant failed to object to Hall’s testimony at trial. Therefore, he is precluded from raising the issue on appeal. LSA-C.Cr.P. art. 841. This assignment lacks merit. Fifth Amendment Right Against Self-Incrimination
The defendant also contends the trial court erred in permitting the state to introduce into evidence his testimony from the Darnell hearing. He |16argues that when he testified at the hearing, he was not granted immunity and he had not been advised of his right against self-incrimination.
The Fifth Amendment to the United States Constitution states, “[N]o person shall be compelled in any criminal case to be a witness against himself.” See also, La. Const. Art. 1, § 16. The prohibition against self-incrimination not only permits a person to refuse to testify *214 against himself at a criminal trial in which he or she is a defendant, but also privileges him or her to refrain from answering official questions addressed to him or her in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him or her in future criminal proceedings. Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).
In Minnesota v. Murphy, supra, the Court explained how the privilege against self-incrimination extends to witnesses:
[I]t is that a witness confronted with ' questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself. If he asserts the privilege, he ‘may not be required to answer a question if there is some rational basis for believing that it will incriminate him, at least without at that time being assured that neither it nor its fruits may be used against him’ in a subsequent criminal proceeding. But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so.
Id,., 465 U.S. at 429, 104 S.Ct. 1136 (internal citations omitted) (emphasis in original).
In the instant case, the defendant was not being interrogated in a 117custodial environment when he testified at Darnell’s hearing. Thus, the trial court was not obligated to inform the defendant of his right against self-incrimination prior to his testimony. See, Minnesota v. Murphy, supra. Additionally, the defendant was free to assert his privilege against self-incrimination at any time during the hearing. He opted not to do so and freely answered questions. Therefore, the defendant waived his right to assert the privilege.
Furthermore, during his trial, the defendant did not object to the use of his previous testimony. Thus, he is precluded from raising the issue in this appeal. See, LSA-C.Cr.P. art. 841(A).
Evidentiary Ruling — Testimony from Disciplinary Proceeding
In his sixth assignment of error, the defendant contends the “trial court erred in permitting testimony of defendant’s disciplinary proceeding and termination from the Shreveport Police Department as the underlying motivation to commit perjury.” However, the defendant did not brief that argument.
URCA Rule 2-12.4 provides, in pertinent part:
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.
As stated above, the defendant put forth no argument to support this assignment of error in his brief. Therefore, this assignment of error is deemed abandoned. See, State v. Jones, 44,036 (La.App.2d Cir.4/15/09), 8 So.3d 845. Furthermore, during his trial, the defendant did not object to the testimony elicited concerning his disciplinary hearing. Therefore, he is | ^prohibited from raising the argument on appeal. See, LSA-C.Cr.P. art. 841(A).

Excessive Sentence

The defendant contends the sentence imposed was excessive, and the trial court erred in failing to reconsider a modification of the sentence. The defendant argues that the court should have imposed a *215 suspended sentence because he is a first offender, his crimes of conviction were nonviolent and his conduct had no effect on Darnell’s conviction. Furthermore, he argues that the trial court failed to give adequate weight to mitigating circumstances because the court was “influenced by its personal beliefs.”
The test imposed by the reviewing court in determining the exees-siveness of a sentence is two pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,633 (La.App.2d Cir.11/3/10), 55 So.3d 56; State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), prior criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a [19needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Swayzer, supra.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of discretion, a sentence will not be set aside as excessive. Id., citing State v. Square, 433 So.2d 104 (La.1983).
Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than $5,000, or both. LSA-R.S. 14:133(C). When perjury is committed in all other cases in which any other sentence may be imposed, the offender shall be fined not more than ten thousand dollars or imprisoned at hard labor for not more than five years, or both. LSA-R.S. 14:123(C)(3).
In State v. Bailey, 494 So.2d 1199, 1202 (La.App. 5th Cir.1986), writ denied, 496 So.2d 351 (La.1986), the court determined that the maximum sentence of five years was not excessive where the defendant’s perjured testimony “frustrated efforts of law enforcement officials to bring the suspected murderer to trial,” despite the fact that the defendant was a single mother and had been previously convicted of only two minor offenses.
In the instant case, a sentencing hearing was held on April 21, 2011. |2nPuring the hearing, several witnesses testified.
Reverend Nathaniel Davis testified that he had known the defendant for approximately two years. He stated that the defendant is a “real nice person, always cheerful, and always ... dutiful about helping his fellow man.”
Tracy Jamerson Harris, a principal at Creswell Elementary School, testified that she had known the defendant approximately three years. She stated that the defendant volunteered to help the young boys’ basketball team.
LaShonda King, the defendant’s ex-wife, testified that she and the defendant were *216 married over 13 years. She described the defendant as “an excellent father” of their 12-year-old daughter. She also stated that the defendant and his daughter were “inseparable.” Ms. King also testified that the defendant loved his job as a police officer and he would have never done anything to jeopardize his family or to put anyone else in harm’s way.
Edward Fuller, a retired Shreveport police officer, testified that he had known the defendant for more than 12 years. He described the defendant as a “very good person” who should not serve jail time for his convictions.
Officer King, the defendant’s brother, testified that he is a retired Shreveport police officer. He expressed his belief that the defendant did nothing wrong and that the defendant is a good candidate for probation or a suspended sentence.
The state called Officer Feliciano as a rebuttal witness. Officer | ⅞1 Feliciano testified that the defendant’s actions on the night of May 17, 2006, were “unbecoming of what [police officers are] trained to do, protect the citizens of the City of Shreveport.” He stated that the defendant’s actions, particularly failing to render assistance to McDonald, “showed other citizens that maybe they can’t rely on the police to be there for them[.]”
Our review of the record indicates that the trial court adequately considered the factors set forth in LSA-C.Cr.P. art. 894.1. Specifically, the trial court noted its consideration of the testimony from the witnesses during the sentencing hearing and stated its reasons for sentencing the defendant, including the fact that a lesser sentence would deprecate the seriousness of the defendant’s actions. Furthermore, the trial court stated that even after being confronted with the videotapes, the defendant was given multiple opportunities to change his testimony and testify truthfully. Yet, the defendant continued to make false statements. The court also pointed out that the defendant had expressed no remorse for his actions, and maintained that he had done nothing wrong throughout his trial and sentencing hearing. The court stated, “[P]erjury is a continuing and defiant crime and one which this defendant to this day is continuing in his defiance with regard to the perjury he committed in a very, very serious offense.” The trial court explained that its sentence was based on the egregious actions of the defendant, in particular the fact that his false testimony could have caused Darnell, a violent offender, to go free. The court stated, “His actions as a police officer absolutely underminefd] the integrity of this court system, the integrity of law enforcement, and quite frankly [were] just despicable.”
| gs>The trial court also considered the applicable mitigating factors, such as the defendant’s status as a first offender, his familial obligations and his participation in community service. The court noted that the defendant had no prior history of criminal activity and that his conduct was “unlikely’ to recur. The court also noted that the defendant and his daughter had a “close relationship” and stated that it is “very painful” to sentence defendants to prison when they have children who need them. However, the court again noted the seriousness of the offenses committed.
The defendant was sentenced to serve four years on each offense to run concurrently. The trial court had the discretion to sentence the defendant up to five years at hard labor on each count. The defendant received a substantial benefit from the trial court’s decision to order the sentences to run concurrently. Given the nature of these offenses, the breach of public trust by this former police officer and the *217 possible consequences of the defendant’s actions, we find that the sentences imposed were not grossly disproportionate to the crimes committed. This assignment lacks merit.

Errors Patent

We have examined this record for errors patent as required by LSA-C.Cr.P. art. 920. We have found none.
CONCLUSION
For the reasons set forth .herein, the defendant’s convictions and sentences are affirmed.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.

. "10-18” is a police communication code used by dispatch or an officer to call any available police units to respond immediately.

. A stoolie sheet is a document that police officers are required to complete during the course of their shift. The document memorializes where an officer has been and what he or she has done during the shift. The stoolie sheet is written in the officer's own handwriting.

. See, State v. Darnell, 43,048 (La.App.2d Cir.8/13/08), 988 So.2d 870, writ not considered, 2008-2258 (La.5/1/09), 6 So.3d 803, reconsideration denied, 2008-2258 (La.5/29/09), 9 So.3d 154.

.The Shreveport police vehicles were equipped with a MVS system, whereby the video cameras are activated when the police officer activates the vehicle’s emergency lights. The testimony revealed that police officers are responsible for filing the necessary paperwork to demonstrate that a video recording from their vehicles should be saved. If the officer does so, the videotape is removed from the vehicle, placed in a tape vault and stored in the property room. If the defendant never filed the paperwork, then the information from the defendant’s dash camera was likely recycled.

. The first bill of information was signed by Lea Hall, Jr., the prosecutor in the Darnell matter. Hall later testified as a witness for the state in the instant matter. The amended bill was signed by Brady O’Callaghan, the assistant district attorney who prosecuted the defendant in this matter.

. The defendant also argues that Hall violated Rules of Professional Conduct: Rule 3.7 by testifying at the defendant's trial. However, any alleged violations of the Rules of Professional Conduct are matters which should be addressed by the Office of Disciplinary Counsel and the Louisiana Supreme Court. Therefore, that argument will not be addressed in this opinion.